OPINION
Defendant, Timothy Smith, appeals from his conviction and sentence for rape and corrupting another with drugs.
On the evening of July 8, 1996, fourteen year old Kristy Boyd decided to run away from home because of problems she was having with her parents. Boyd went to the home of friend, Holly Gray, who lives in Englewood, Ohio.
Several people were gathered at Holly Gray's residence when Boyd arrived, including Boyd's boyfriend and three men whom Boyd had never met: Defendant Smith, Robby Cable, and William Voss. Defendant and Voss were drinking beer.
Shortly after Boyd's arrival, everyone decided to leave. Instead of going with Holly Gray or someone else whom she knew, Boyd elected to accompany Defendant, Cable, and Voss, back to Defendant's house.
While the four were walking to Defendant's house police stopped and detained Defendant when he threw an old tire into an alley. The others proceeded on to Defendant's house. When Defendant arrived a few minutes later, he remarked that police had given him a ticket but did not find his marijuana.
While at Defendant's house everyone, including Boyd, smoked marijuana. Boyd additionally observed Defendant and Voss snorting a white powdery substance that appeared to be cocaine. Shortly thereafter, Kristy Boyd and Robby Cable began kissing.
At this point the evidence becomes conflicting. According to the State's version of the events, Cable asked Boyd for sex but she said "no." Later, when Boyd asked Cable where the bathroom was located, Cable led her instead into a bedroom, closed the door, and would not allow Boyd to leave.
Cable indicated to Boyd that he wanted to have sex, Boyd once again said "no," but Cable made it appear that Boyd had no choice. Boyd didn't want to have sex, but Cable took her pants and underwear off and had sex with her.
At the time of this assault, Boyd was menstruating and was wearing a tampon. Boyd didn't fight or scream for help, because the only other people in the house were Defendant and Voss, who were Cable's friends.
When Cable finished he left the room, but before Boyd could put her pants back on Defendant and Voss entered the room. Defendant asked for sex, but Boyd told him "no." Defendant then pushed Boyd down onto the bed, removed her underwear, and pried her legs apart. Defendant then forcibly inserted his penis into Boyd while Voss was leaned across her, kissing her breasts and holding her down.
At some point Defendant got off of Boyd and Voss got on top of her. After inserting his finger into Boyd's vagina, Voss got off of Boyd and Defendant got back on top of her and resumed having intercourse with her. Boyd was crying and in pain. Finally, Boyd dug her fingernails into Defendant's arm and chest and screamed at Defendant to get off of her, which Defendant did.
According to the defense version of these events, Boyd willingly followed Robby Cable into the bedroom and had sex with him. After Cable left the room, Defendant and Voss entered. Defendant sat down on the bed next to Boyd who was wearing only a bra and panties. Defendant began kissing Boyd, asking her if she "wanted to have some fun." Boyd replied, "I don't know."
Defendant got on top of Boyd, took her bra and panties off, pulled his own pants down, and attempted to have intercourse with Boyd. Defendant remarked that he "couldn't get it in." Boyd did not scream, try to escape, or in any other way protest or indicate that she did not consent to this. Defendant did not use any force against Boyd, and all sexual activity was consensual.
Defendant got off of Boyd and let Voss "have some fun." Defendant later got back on top of Boyd and resumed his attempts at intercourse. Defendant was unable to penetrate Boyd. Finally, when Boyd screamed at Defendant to get off her, Defendant immediately complied.
When Boyd began to dress, Defendant told her: "you know you liked it." Boyd was very upset when she left and walked back to Holly Gray's house. Cable and Voss followed her. Voss even apologized to Boyd. Holly Gray's boyfriend then walked Boyd home, and Boyd snuck back into her house and pretended to be asleep until her mother left for work.
After Boyd took a shower, she called a friend and told her about the attack. Boyd and her friend returned to Holly Gray's house, where more of their friends had gathered. After Boyd told her friends of the attack, one of them convinced Boyd to call the police. Boyd was subsequently taken to Good Samaritan Hospital for examination.
As a result of these events Defendant was indicted on two counts of rape in violation of R.C. 2907.02(A)(2), two counts of corrupting another with drugs in violation of R.C.2925.02(A)(4)(a), and one count of complicity to commit rape in violation of R.C. 2923.03 and R.C. 2907.02. Subsequently, Defendant was indicted on an additional count of intimidating a crime victim in violation of R.C. 2921.04(B).
Defendant waived a jury trial and was tried to the court. At the trial the emergency room physician who examined Boyd testified that she had two small, fresh lacerations on her vaginal lining which, in his opinion, had been caused by the forcible insertion of an object larger than a finger. During his examination the physician removed a tampon that had been pushed far up inside Boyd's vaginal cavity. One of the vaginal swabs taken from Boyd contained semen with a blood type consistent with Defendant's, but inconsistent with those of either Cable or Voss.
When police arrested Defendant, marijuana was seized from his home. While police interviewed Defendant, photographs were taken depicting scratch marks on Defendant's chest.
The court found Defendant guilty of one count of rape and one count of corrupting another with drugs. Defendant was acquitted of all other charges. The trial court subsequently sentenced Defendant to six years imprisonment on the rape and fourteen months on the drug offense, the sentences to be served concurrently.
Defendant has timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 APPELLANT'S CONVICTION FOR RAPE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant, Timothy Smith, was found guilty of violating R.C.2907.02(A)(2), which states:
 No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
Sexual conduct is defined by R.C. 2907.01(A) to mean:
 "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and without privilege to do so, the insertion, however slight, of any part of the body or an instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
Purposely is defined in R.C. 2901.22(A):
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
Sufficiency of the evidence and weight of the evidence are distinct concepts to which different legal tests apply. State v.Thompkins (1997), 78 Ohio St.3d 380; State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported.
 "Sufficiency" of the evidence refers to its logical capacity to demonstrate both the criminal conduct and the culpable mental state that the alleged criminal liability requires. The test is whether all or some part of the evidence that was admitted in the trial would, if believed, convince the average mind beyond a reasonable doubt that the defendant is guilty of committing the offense charged. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "Weight" of the evidence refers to the inclination of the greater amount of the credible evidence presented in a trial to prove the issue established by the verdict that was reached. State v. Thompkins (1997), 78 Ohio St.3d 380. The test is whether that evidence is capable of inducing belief in its truth, and whether those truths preponderate in favor of the verdict according to the applicable burden of proof. Id.
State v. Bradley (Oct. 2, 1997), Champaign App. No. 97-CA-03, unreported, at 7.
A weight of the evidence inquiry tests the rational, not legal, sufficiency of the evidence; that is, its persuasiveness.State v. Martin (1983), 20 Ohio App.3d 172. With respect to both weight and sufficiency, an appellate court reviewing a criminal conviction must view the evidence for purposes of its inquiry in the light most favorable to the prosecution. State v. Jenks,supra.
Viewing the evidence presented at trial in a light most favorable to the prosecution, particularly the testimony by the victim, Kristy Boyd, we conclude that a rational trier of fact could have been persuaded to find that all of the essential elements of rape were proved beyond a reasonable doubt. Accordingly, Timothy Smith's conviction for rape is not against the manifest weight of the evidence.
As Defendant correctly points out, the evidence presented at trial was conflicting on the issues of whether "sexual conduct" occurred between Defendant and Kristy Boyd, and whether that sexual activity was consensual on Boyd's part, or whether her submission was purposely compelled by Defendant's use of force. However, the trial judge sitting as the trier of fact did not lose his way in accepting Boyd's version of these events as more believable than Defendant's version. Accordingly, we will not disturb the factfinder's determination of witness credibility. On this record as a whole, we clearly cannot say that the evidence weighs heavily against a conviction or that a manifest miscarriage of justice has resulted.
The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 APPELLANT WAS DENIED HIS RIGHT UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION TO THE EFFECTIVE ASSISTANCE OF COUNSEL.
The standard for judging the quality of representation by defense counsel in a criminal case is set forth in Strickland v.Washington (1984), 466 U.S. 668. In reviewing that standard the Ohio Supreme Court in State v. Bradley (1989), 42 Ohio St.3d 136,142, stated:
 "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688, 104 S.Ct. at 2064. The court recognized that there are " * * * countless ways to provide effective assistance in any given case. * * * " Id. at 689, 104 S.Ct. at 2065. Therefore, the court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential. * * * " Id. In addition, "[b]ecause of the difficulties inherent in making the evaluation, a court must [538 N.E.2d 380] indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.
 Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365 [101 S.Ct. 665, 667-68, 66 L.Ed.2d 564] (1981)." Strickland, supra, 466 U.S. at 691, 104 S.Ct. at 2066. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 694.
Defendant argues that the key issue in this case was the credibility of the victim, Kristy Boyd, and that defense counsel performed in a deficient manner by failing to cross-examine Boyd about a prior statement she gave to police that was inconsistent with her testimony at trial.
Boyd's statement to police, upon which this claim of error is based, was part of a "supplemental police report" that Defendant presented in support of his motion for a new trial. There is nothing in the record to indicate that this document was ever presented or otherwise before the court in the course of Defendant's trial.
When an appellate court reviews the record it is confined to those matters which were part of the proceedings before the trial court. State v. Ishmail (1978), 54 Ohio St.2d 402. As this court observed in Bennett v. Dayton Memorial Park Cemetery Assn.
(1950), 88 Ohio App. 98:
 In an appeal on questions of law the reviewing court may consider only that which was considered by the trial court and nothing more.
Syllabus.
As this supplemental police report containing Boyd's statement was not part of the proceedings before the court at the time of Defendant's trial, this matter is not part of the record properly before us for purposes of determining the quality of defense counsel's representation during that trial. Nevertheless, even if we were to consider this alleged statement by Boyd to the police, we could find no basis to hold that Defendant's trial counsel was ineffective for failing to use it in his cross-examination of Boyd. It is apparent that, while the statement is inconsistent with Boyd's trial testimony in certain details, the statement clearly portrays a forcible rape of Boyd by the Defendant. Defense counsel's failure to cross-examine Kristy Boyd about this prior statement was no doubt a tactical decision, designed to avoid the damaging effect of repeating the facts supporting the claim of forcible rape.
Whether to cross-examine witnesses and the extent of that cross-examination is a tactical matter committed to the sound discretion of trial counsel, and does not constitute ineffective assistance. State v. Otte (1996), 74 Ohio St.3d 555; State v.Clayton (1980), 62 Ohio St.2d 45. Deficient performance by defense counsel could not be shown in the respect alleged, therefore.
The second assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, J. and YOUNG, J., concur.
Copies mailed to:
Lynda K. Ashbery, Esq.
James S. Armstrong, Esq.
Hon. Richard S. Dodge (Visiting Judge)